FILED

2015 Sep-02  PM 01:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RONNIE GUY YOUNG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:14-CV-407-VEH** |
| | ) |
| **KIMBERLY MYHRER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Ronnie Guy Young ("Mr. Young") initiated this civil rights case on March 7, 2014, for injuries that he sustained on March 14, 2012, after being arrested by the United States Marshals' Service and placed into custody with the Shelby County Sheriff's Department on March 8, 2012. (Doc. 1; *see also* Doc. 10 ¶¶ 6, 8). On May 30, 2014, Mr. Young filed an amended complaint (Doc. 10) against the following seven individual defendants who have all been sued in their personal capacities only:  Kimberly Myhrer ("Officer Myhrer"), Ronald Higgins ("Officer Higgins"), Timothy Laatsch ("Sergeant Laatsch"), Shanna Young ("Officer Young"), Matthew Joiner ("Officer Joiner"), David Mitchell ("Officer Mitchell"), and Shane Mills ("Officer Mills") (collectively, the "Defendants"). (Doc. 10 ¶¶ 4-6).

The first amended complaint contains four separate counts. Counts One and Two assert federal constitutional claims for deliberate indifference arising under 42 U.S.C. §§ 1983 and 1985. (Doc. 10 ¶¶ 20-29). Counts Three and Four allege violations of state law–specifically, negligence and wantonness (*id.* ¶¶ 30-33) as well as the intentional infliction of emotional distress. (*Id.* ¶¶ 34-37). All four counts are brought against "Defendants" collectively.

Pending before the court is Defendants' Motion for Summary Judgment (Doc. 49) (the "Motion") filed on May 29, 2015. Defendants filed their evidentiary materials and brief on this same date. (Docs. 50, 51).

Mr. Young opposed the Motion on June 19, 2015. (Docs. 52, 53). Defendants followed with their reply on July 2, 2015. (Doc. 54). Accordingly, the Motion is now under submission and, for the reasons explained below, is **GRANTED IN PART** and otherwise is **DENIED**.

## II.   APPLICABLE STANDARDS

### A.   Summary Judgment Generally

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th

Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510,  91 L. Ed. 2d 202 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

Finally "[i]f the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d at 1274 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

## B.    Qualified Immunity

All defendants assert that qualified immunity bars Mr. Young's federal claims brought against them in their personal capacities. (Doc. 50 at 27).[1] "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly

---

[1]  Any page references to Doc. 50 correspond with the court's CM/ECF numbering system.

established statutory or constitutional rights of which a reasonable person would have known.'" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks omitted) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id*.

This is a two-part test. Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Next, the defendant must prove that he or she was "executing that job-related function." *Id*. at 1267. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.[2]

Until 2009, the Supreme Court had required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Under the *Saucier* test, "[t]he

---

[2] Here, there is no dispute over whether the individual defendants were all acting within the scope of their discretionary authority. (*See, e.g.*, Doc. 52 at 17 (Mr. Young's referencing discretionary authority burden, but offering no basis for challenging Defendants' conduct as non-discretionary in nature)).

4

threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513,153 L. Ed. 2d 666 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739, 122 S. Ct. at 2515. This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158.

The "unlawfulness must be apparent" under preexisting law.[3] *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98, 89 L. Ed. 2d 271 (1986)). Therefore, a temporal requirement exists related to this inquiry. More particularly, a plaintiff must show that a reasonable public officer would not have believed her actions to be lawful in light of law that was clearly established at the

---

[3] Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation. *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

time of the purported violation. *See Anderson*, 483 U.S. at 639, 107 S. Ct. at 3038 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' <u>at the time</u> it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) ("If the law <u>at that time</u> did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198, 125 S. Ct. at 599 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law <u>at the time</u> of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no [preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), in which the Court concluded that, "while the sequence set forth [in

*Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991).Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

### C.    State Sovereign Immunity

As the Eleventh Circuit set forth the Alabama sovereign immunity doctrine in *Lancaster v. Monroe County*,116 F.3d 1419 (11th Cir. 1997):

> "[U]nder Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996) *cert. denied*, (June 27, 1997) (No. 96–1756). The source of absolute sovereign immunity is Article I, § 14 of the Alabama Constitution of 1901, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." That provision bars any suit

7

against the state of Alabama or its agencies. *See Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989). That provision also grants immunity to state officers and employees in their official <u>and individual capacities</u>, when the action is, in reality, a suit against the state. *See id.* . . .

In deciding whether an action against a state officer is, in fact, an action against the state, Alabama law instructs us to consider the nature of the action and the relief sought. *See Phillips*, 555 So. 2d at 83. According to *Parker v. Amerson*, if the "nature of the action" is a suit against a state official for the negligent performance of his statutory duties, that action is in reality a suit against the state. *See* 519 So. 2d at 446. <u>It does not matter, either, that Ms. Lancaster seeks only damages from the individual defendants</u>. <u>The same relief was sought from the deputy sheriff in Alexander; nevertheless, the Alabama Supreme Court treated the suit as one against the state</u>. *See Alexander*, 652 So. 2d at 1143-44.

*Lancaster*, 116 F.3d at 1430-31 (emphasis added); *see also McMillian v. Johnson*, 101 F.3d 1363, 1365 ("Notwithstanding this confusing language in *Tinney*, the holding of the case is clear:  under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity.").

Additionally, an immunity dismissal based upon § 14 of the Alabama Constitution is a jurisdictional one. *See, e.g., Ex parte Davis*, 9 So. 3d 480, 483 (Ala. 2008) ("Because the original complaint purported to state a cause of action against Davis and Isaacs in violation of § 14, Alabama Constitution of 1901, <u>the trial court did not acquire subject-matter jurisdiction</u> over the claims against the deputies when the original complaint was filed." (emphasis added) (citing *Ex parte Blankenship*, 893

So. 2d 303, 306-07 (Ala. 2004))).

## III.   FACTUAL BACKGROUND[4]

Mr. Young has an extensive criminal history in California, having been convicted of assault with a firearm, possession of drugs, and possession of drugs with the intent to distribute. AF No. 1.1.[5] He has spent 18 of his 46 years of life in state prisons in California. AF No. 1.2. Although born and raised in California, he has family in Shelby County, Alabama. AF No. 2.

In 2011, Mr. Young was convicted in California of distribution of methamphetamines and received a sentence of either four years of incarceration or

---

[4]   This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[5]   The designation "AF" stands for admitted fact and indicates a fact offered by Defendants that Mr. Young has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case. Under appendix II of the court's uniform initial order (Doc. 4) entered on March 10, 2014, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). For Mr. Young, more specifically, this means that "[a]ny statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based." (*Id.* at 17). Consequently, whenever Mr. Young has inadequately asserted a dispute over a fact that Defendants have otherwise substantiated with an evidentiary citation, the court has reviewed the cited evidence and, if it in fact fairly supports Defendants' factual assertion, has accepted Defendants' fact. On the other hand, whenever Mr. Young has adequately disputed a fact offered by Defendants, the court has reviewed the evidence cited by Mr. Young and, if it in fact fairly supports Mr. Young's factual assertion, has accepted Mr. Young's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendants' statement of undisputed facts as set forth in Doc. 50 and responded to by Mr. Young in Doc. 52. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 1.2) would indicate the second sentence of paragraph 1 of Defendants' facts is the subject of the court's citation to the record.

participation in an in-house drug program. AF No. 3.1. Mr. Young participated in the program for approximately one and a half months, at which time he fled to Alabama. AF No. 3.2.  A fugitive from justice warrant was issued by California Department of Corrections on February 13, 2012 for the arrest of Mr. Young. AF No. 4.

On December 28, 2009, James Wesley Howard ("Mr. Howard") was arrested and charged with the murder of Kara Nichole Lee ("Kara Lee"), and was incarcerated in the Shelby County Jail pending trial for capital murder. AF No. 5.1. Kara Lee was approximately 2 years old at the time of her death and Mr. Howard was the boyfriend of Kara Lee's mother, Britany Lee. AF No. 5.2. Mr. Young's nephew, William Young, Jr., ("William Young") was the father of Kara Lee. AF No. 5.3. While Mr. Young was in Alabama as a fugitive from California, he spoke with William Young several times about Mr. Howard, and during these conversations William Young told Mr. Young that Mr. Howard was incarcerated in the Shelby County jail. AF No. 6.

On the early morning hours of March 9, 2012, Mr. Young was arrested by the U.S. Marshal's Service at the home of his brother, George Young, in Shelby, Alabama. AF No. 7. Mr. Young was transported to the Shelby County jail and booked in on March 9, 2012. AF No. 8.1. The booking officers received a report that Mr. Young was a known felon, gang member, had a history of carrying a gun, assaulting police officers, and was an escape risk. AF No. 8.2. It was also reported that Mr.

Young had claimed to be a member of the Southern Brotherhood, a white supremacist gang. AF No. 8.3.

During the booking process, an Inmate Questionnaire (the "Questionnaire") was completed which Mr. Young signed. AF No. 9.1; (*see also* Doc. 51-11 at 4 at 10 (Officer Higgins's answering affirmatively that he was the officer who asked Mr. Young the questions on the Questionnaire)). Question number 25 asked Mr. Young if he was "aware of any reason [he] should be separated from another inmate while [he] is here?" to which Mr. Young responded "no". AF No. 9.2. Officer Higgins asked Mr. Young the questions verbatim as set out on the Questionnaire, and marked down Mr. Young's responses. AF No. 9.3; (*see also* Doc. 51-11 at 4 at 11 (Officer Higgins's testifying that "Sergeant Myers told me that you are to ask each question verbatim to the inmate, and that's how I asked them, verbatim")). Further, Mr. Young signed the Questionnaire attesting to the accuracy of the information. AF No. 9.3. Additionally, at no time did Mr. Young inform the booking officers about his adverse affiliation with Mr. Howard or otherwise indicate that he should be separated from Mr. Howard.[6] AF No. 9.4.

---

[6] While Defendants factually suggest that none of them had any knowledge of Mr. Young's adverse affiliation with Mr. Howard, Mr. Young objects to this particular fact and points out in his opposition (Doc. 52 at 6 ¶ 9) that Defendants' evidentiary citations are limited to the sworn testimony from two of the seven Defendants. Officer Myhrer testified during her deposition that on the date Mr. Young was booked, "we didn't know he had any relation with Mr. Howard[,]" but does not specify who "we" are. (Doc. 51-10 at 11 at 39). Sergeant Laatsch similarly testified that, "[a]t

Mr. Young testified that he heard the [Deputy] U.S. Marshals state to the booking officers that he was to remain in isolation, as opposed to being placed in the general population. (Doc. 52 at 6 ¶ 10). Initially, Officer Myhrer placed Mr. Young in administrative segregation. AF No. 10.

On March 10, 2012, Officer Joiner classified Mr. Young as a maximum security inmate based on his extensive history of assaultive behavior and on the reports from the arresting officers. AF No. 11.1. However, Officer Joiner could not confirm these claims through the National Crime Information Center, and therefore the classification evaluation of Mr. Young continued. AF No. 11.2.

On March 12, 2012, Sergeant Laatsch continued to investigate Mr. Young's criminal and behavioral history in order to further assess his classification status. AF No. 12.1. Due to the fact that Sergeant Laatsch had received conflicting reports as to Mr. Young's criminal history and since he could not confirm the charges of assaults against officers and escape attempts, Sergeant Laatsch had Mr. Young moved from an administrative segregation cell to Unit B-3, which is a single person lockdown cell. AF No. 12.2.

---

no point were we made aware of [Mr. Young's] affiliation with [Mr.] Howard." (Doc. 51-13 at 27 at 101). At the same time, there is no evidence contained in the record from which a reasonable jury could conclude that one or more of the remaining five Defendants actually had prior individualized knowledge of the potential conflict between Mr. Young and Mr. Howard.

On the morning of March 14, 2012, Sergeant Laatsch continued with his investigation into the behavioral reports concerning Mr. Young. AF No. 16.1. He was unsuccessful in confirming that Mr. Young was an escape risk and had a violent history toward correction staff while at previous institutions. AF No. 16.2. He further reviewed Mr. Young's history and considered a report from Sergeant Dixon[7] of his interview of Mr. Young. AF No. 16.3. Sergeant Dixon had reported to Sergeant Laatsch that Mr. Young did not deny some of his past aggressive behavior but declared that he was not like that anymore. AF No. 16.4. Based on the prior charges of kidnapping first and an aggravated assault from California, Sergeant Laatsch took into consideration the behavioral reports on Mr. Young to classify him with a medium designation instead of continuing to keep him in segregation. AF No. 16.5.

In the afternoon of March 14, 2012, prior to the end of his shift, Sergeant Laatsch sent an email to Officer Joiner informing him that he was unable to complete three inmate housing moves during the day shift, and for Officer Joiner to make these moves during his shift if he had the time. AF No. 17.1. One of these housing moves was for Mr. Young to be moved from his B3 single cell to Pod A, Block 6. AF No. 17.2. Pod A, Block 6 (A-6) houses both maximum and medium security inmates having a history of assaultive behavior. AF No. 18.

---

[7] Mr. Young has not sued Sergeant Dixon.

13

Pod A is comprised of a number of cell blocks. AF No. 19.1. Each block contains a number of cells. AF No. 19.2. In the center of the pod is a tower manned by a correctional officer, with a view into each block. AF No. 19.3. There are two additional officers assigned to the pod who act as rovers throughout the pod. AF No. 19.4.

Each block surrounding the tower is triangular in shape. AF No. 19.5. A-6 is comprised of a large room with tables, chairs, phones, a television, and showers, referred to as the "dayroom". AF No. 19.6. Along the back wall of the block are two man cells, configured in a lower and upper level. AF No. 19.7. The cell doors routinely remain open during the day so that inmates can utilize the dayroom and go to and from their cells. AF No. 19.8.

Each block is monitored by a closed circuit camera which feeds into the tower. AF No. 20.1. Each block is also equipped with an intercom system which an inmate can use to communicate directly with the tower guard. AF No. 20.2.

Mr. Howard was housed in A-6. AF No. 21.1. Within a few minutes of Mr. Young entering A-6, Mr. Howard approached Mr. Young and introduced himself to him. AF No. 21.2. Mr. Young confronted Mr. Howard with the death of his great niece, and the two began to argue in the dayroom. AF No. 21.3.

Mr. Young accused Mr. Howard of killing his niece, to which Mr. Howard

14

responded that he was innocent and had paperwork in his cell showing that the DNA results were inconclusive. AF No. 22.1. Mr. Howard left the dayroom and went up the steps to his cell located on the upper level. AF No. 22.2. Mr. Young followed Mr. Howard up the steps to Mr. Howard's cell. AF No. 22.3.

Immediately after Mr. Howard entered his cell, he bent down next to his bunk and started going through his paperwork. AF No. 23.1 While Mr. Young was standing beside and over Mr. Howard, Mr. Young began punching Mr. Howard in the head. AF No. 23.2. Mr. Howard retaliated and punched Mr. Young several times, knocking him to the floor. AF No. 23.3 Mr. Howard kicked Mr. Young several times and then left the cell. AF No. 23.4.

Mr. Young was taken to the jail medical unit and then transferred to the Shelby Baptist Medical Center. AF No. 24.1. From there he was transported to UAB Hospital. AF No. 24.2.

While Mr. Young criticizes its thoroughness (Doc. 52 at 8 ¶ 25), an investigation into the fight took place, including a recorded interview of Mr. Young. AF No. 25.1. During the interview, Mr. Young claimed not to remember any details of the fight and that his last memory was of him packing his belongings to move from B-3 to A-6. AF No. 25.2. Additionally, Mr. Young admitted in the interview that he knew Mr. Howard was in the Shelby County jail and further admitted that he did not

inform the correctional officers of his relationship to Mr. Howard or that he should be separated from Mr. Howard. AF No. 26.

On multiple occasions prior to his fight with Mr. Howard, Mr. Young had the opportunity to inform the jail guards of his adverse affiliation with Mr. Howard and yet he never did this. AF No. 32.1. More specifically, Mr. Young interacted with the guards on a routine basis throughout the day, including being escorted by guards to the shower and being served meals. AF Nos. 32.2, 32.3, 32.4. Additionally, Mr. Young could have informed Sergeant Dixon about his knowledge of Mr. Howard while being interviewed, but failed to do so. AF No. 32.5.

Mr. Young also could have brought the potential conflict issue to Defendants' attention when he was being moved, but instead he remained silent and never informed any Defendants (or other correctional personnel) about this combustible relationship. AF Nos. 32.6, 32.7. Finally, Mr. Young also could have alerted the tower guard via the intercom system in the dayroom that he should not be housed in the same block as Mr. Howard, once he realized his presence. AF No. 32.8. Instead, Mr. Young followed Mr. Howard to Mr. Howard's cell and instigated a physical fight with him. AF No. 32.9.

On March 16, 2012, Mr. Young was returned back to the jail from UAB Hospital, and then was extradited to California on March 27, 2012, to serve out his

sentence. AF No. 27.

## IV.   ANALYSIS

### A.   Federal Claims

#### 1.   Count One–Mr. Young's § 1983 Deliberate Indifference Claim

Count One of Mr. Young's amended complaint asserts deliberate indifference

against Defendants pursuant to § 1983.[8] Under the Eighth Amendment:

> Prison officials have an obligation to protect prisoners from violence inflicted upon them by other prisoners. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994). Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984). Only "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

> Thus, a prisoner-plaintiff must first demonstrate "an objectively

---

[8] Section 1983 provides a vehicle for bringing claims for constitutional violations committed under color of state law. To survive summary judgment on his § 1983 claim, Mr. Young must demonstrate both that Defendants deprived him of a right secured under the United States Constitution or federal law and that the deprivation occurred under color of state law. *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Here there is no dispute that Defendants acted under color of state law. Instead, the focus on summary judgment is whether Mr. Young has adduced sufficient evidence from which a reasonable jury could conclude that Defendants acted with deliberate indifference in their placement of Mr. Young in the same cell block as Mr. Howard.

> substantial risk of serious harm to prisoners." *Id.* at 1028-29. Then, the
> plaintiff must show that the defendant was deliberately indifferent,
> which requires the following: "(1) subjective knowledge of a risk of
> serious harm; (2) disregard of that risk; (3) by conduct that is more than
> gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32
> (11th Cir. 2013) (internal quotation marks omitted).

*Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). With respect to

evaluating a defendant's failure to act "the known risk of injury must be 'a strong

likelihood, rather than a mere possibility.'" *Brown v. Hughes*, 894 F.2d 1533, 1537

(11th Cir. 1990) (citing *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (in

turn quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir.

1983))). Additionally, the Eleventh Circuit has "stress[ed] that 'a prison custodian

is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v.*

*Toombs County*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of*

*Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)).

Accepting the summary judgment record in a light most favorable to Mr.

Young, no reasonable jury could conclude that he meets the *prima facie* elements of

the demanding deliberate indifference standard. In particular, Mr. Young has not

adduced sufficient evidence to show how each separately named Defendant possessed

a "sufficiently culpable state of mind[,]" *Farmer v. Brennan*, 511 U.S. 825, 824, 114

S. Ct. 1970, 1977,  128 L. Ed. 2d 811 (1994) (internal quotation marks omitted)

(quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991)), with respect to Mr. Young's "health or safety" when moving him to the same cell block where Mr. Howard also was being kept. *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977. Indeed, the record is devoid of <u>any</u> evidence which shows that <u>any</u> Defendant knew in advance of the adverse connection shared between Mr. Young and Mr. Howard or otherwise appreciated the potential danger created by placing Mr. Young in the same cell block as Mr. Howard. At best, Mr. Young has shown mere negligence on the part of Defendants in their prison placement of him and this level of fault cannot sustain a deliberate indifference claim.[9] *See, e.g., Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013) ("Were we to accept that theory of liability, the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not." (citing *Farmer*, 511 U.S. at 838, 114 S. Ct. at 1979)).

Therefore, in the absence of proof establishing Defendants' requisite subjective

---

[9]   For example, Mr. Young pokes holes into the prisoner classification process that Defendants used on him, including their decision to ignore the competing recommendation made by the arresting Deputy U.S. Marshals that Mr. Young remain in isolation from the general population during his temporary stay at the Shelby County jail. However, merely questioning the wisdom of Defendants' decision to change his placement is not the equivalent of demonstrating a deliberate decision to place Mr. Young in a precarious situation in which he would likely be harmed.

awareness,[10] no reasonable jury could ever find in Mr. Young's favor on his deliberate indifference claim.

Assuming that material factual disputes preclude summary judgment on Mr. Young's deliberate indifference claim, qualified immunity, nonetheless, alternatively protects Defendants from any liability for that purported constitutional violation. As Defendants explain:

> In the Eighth Amendment context, "[o]nce qualified immunity is asserted by the defendants, the plaintiff must show that the law was clearly established that the defendants' acts rose to the level of 'deliberate indifference.'" *Schmelz v. Monroe Cnty.*, 954 F.2d 1540, 1544 (11th Cir. 1992); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("the qualified immunity standard is broad enough to cover mistaken judgment").

(Doc. 50 at 29).

As the Eleventh Circuit has described a plaintiff's burden in opposing qualified immunity in the absence a dispute over the issue of an officer's discretionary authority:

---

[10] The court acknowledges that Mr. Young attributes an unidentified nurse at the Shelby County jail as offering an apology and stating to him that "the officers had expected a different outcome in that cell." (Doc. 52 at 11 ¶ 4; *see also id.* at 16 (suggesting that nurse's statement "creates a serious dispute of material fact as to whether Defendants acted knowingly or recklessly)). Assuming that this double hearsay statement would ever even become admissible, it still would be insufficient to show awareness under the deliberate indifference standard as no specific Defendants are identified and collective awareness is an impermissible concept under the Eighth Amendment. *See Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("As such, imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." (citing *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005))).

20

In satisfying this burden, <u>the plaintiff cannot point to sweeping propositions of law</u> and simply posit that those propositions are applicable. Instead, <u>the plaintiff must draw the court's attention toward a more particularized and fact-specific inquiry</u> ... show[ing] that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances.... If no such case law exists, then the defendant is entitled to qualified immunity.

*Nicholson v. Georgia Dept. of Human Resources,* 918 F.2d 145, 147 (11th Cir. 1990) (citations omitted); *see also Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989) ("[P]laintiffs must prove the existence of a clear, *factually defined*, well-recognized right of which a reasonable police officer should have known.... *The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful*." (First emphasis added.)) "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Lassiter,* 28 F.3d at 1149 (citing *Malley v. Briggs,* 475 U.S. 335, 341-43, 106 S. Ct. 1092, 1096-97, 89 L. Ed. 2d 271 (1986)). Thus:

When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. *See, e.g., Edwards v. Gilbert*, 867 F.2d 1271, 1277 (11th Cir. 1989). Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.

*Adams v. St. Lucie County Sheriff's Dept.*, 962 F.2d 1563, 1575 (11th Cir. 1992) (Edmondson, J., dissenting), *approved en banc*, 998

21

> F.2d 923 (11th Cir. 1992). "<u>For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about),</u> the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter*, 28 F.3d at 1150.

*Belcher v. City of Foley*, 30 F.3d 1390, 1395-96 (11th Cir. 1994) (emphasis by underlining added); *see also Santamorena v. Georgia Military College*, 147 F.3d 1337, 1340 (11th Cir. 1998) ("To overcome this immunity, Plaintiff has the burden of pointing to case law which 'pre-date[s] the offic[ial]'s alleged improper conduct, involve[s] materially similar facts, and 'truly compel[s]' the conclusion that the plaintiff had a right under federal law.'" (quoting *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998))).

Against this backdrop, noticeably absent from Mr. Young's opposition is a citation to binding authority which establishes that Defendants' actions clearly "rose to  the level of 'deliberate indifference.'" Instead, Mr. Young's brief unpersuasively speaks in generalities without developing the requisite specificity that a qualified immunity case customarily demands from a plaintiff.

Furthermore, the far from extreme factual nature of Mr. Young's deliberate indifference claim means that this constitutional violation does not fall within that extraordinary class of so-called "obvious clarity" cases in which no preexisting binding authority is necessary to provide a public official with fair warning of his

unconstitutional behavior. *See Santamorena*, 147 F.3d at 1340 n.6 ("[T]hese exceptional cases <u>rarely</u> arise.") (emphasis added); *see also Gray*, 458 F.3d at 1307 (listing examples of cases  coming within the narrow "obvious clarity" category and describing them as all involving challenged conduct falling "'well beyond the 'hazy border' that sometimes separates lawful conduct from unlawful conduct," such that every objectively reasonable officer would have known that the conduct was unlawful" (quoting *Evans v. Stephens*, 407 F.3d 1272, 1283 (11th Cir. 2005) (en banc))); *cf. Rodriguez v. Farrell*, 280 F.3d 1341, 1350 n.18 (11th Cir. 2002) ("We very occasionally encounter the exceptional case in which a defendant officer's <u>acts are so egregious</u> that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable . . . officer that what the defendant officer was doing must be [deliberately indifferent] within the meaning of the [Eighth] Amendment.") (emphasis added). Consequently, in opposing Defendants' qualified immunity defense on his deliberate indifference claim, Mr. Young has not met the clearly established law component and, summary judgment in favor of Defendants is alternatively appropriate for this additional reason.

### 2.     Count Two–Mr. Young's  § 1985 Conspiracy Claim

Additionally, because Count One is subject to summary judgment as not

meeting the deliberate indifference constitutional standard, Mr. Young's dependent § 1985 conspiracy claim under Count Two is likewise due to be dismissed. *See, e.g., Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010) ("A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the <u>actual denial of some underlying constitutional right</u>." (emphasis added) (citing *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998))). Furthermore, Mr. Young's civil conspiracy claim fails because he has not shown <u>any</u> evidence from which a reasonable jury could conclude that "[D]efendants 'reached an understanding' to violate [his] constitutional rights." *Grider*, 618 F.3d at 1260 (citing *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement.")).

Accordingly, for these independent reasons, Defendants' Motion is **GRANTED** as to Count One and Count Two of Mr. Young's amended complaint and all of Mr. Young's federal claims are **HEREBY DISMISSED WITH PREJUDICE**.

## B.   State Law Claims

### 1.   State Sovereign Immunity

Regarding Mr. Young's state law claims of negligence, wantonness asserted in Count Three, and intentional infliction of emotional distress alleged in Count Four,

Defendants primarily contend that state sovereign immunity requires a dismissal of them.[11] (Doc. 50 at 29-31). The court has previously described some of the general principles governing the sovereign immunity standard.

As Defendants summarize the status of sovereign immunity more specifically for employees of a sheriff's department and a county jail:

> "Under Alabama law, sheriffs and deputy sheriffs are considered executive officers of the state, and therefore immune from suit in both their official and individual capacities." *Johnson v. Conner*, 720 F.3d 1311, 1313 (11th Cir. 2013); *McMillian v. Monroe Cnty.*, 520 U.S. 781, 793 (1997); *Drain v. Odom*, 631 So. 2d 971, 972 (Ala. 1994); *Ex parte Purvis*, 689 So. 2d 794, 796 (Ala. 1996). A sheriff's deputy "guarding the prisoners in the county jail" is specifically "immune from liability…because of the sovereign immunity afforded them by § 14, Alabama Constitution of 1901." *Ex parte Davis*, 9 So. 3d 480, 483 (Ala. 2008).

> In *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419 (11th Cir. 1997), the Eleventh Circuit logically found that a sheriff's non-deputy jailers were equally entitled to absolute immunity. *Id.* at 1431. However, the Alabama Supreme Court later employed a somewhat labored analysis in order to deny absolute immunity to a jailer for a state-law wrongful death claim arising from an automobile accident which occurred as the result of the jailer running a red light. *Ex parte Shelley*, 53 So. 2d 887, 892-97 (Ala. 2009). The Court concluded that because the defendant was neither a sheriff nor a deputy, he was not entitled to absolute immunity. *Id.* at 896-97.

> The Alabama Legislature quickly responded and "extended state

---

[11] Defendants also make an argument about the need for Mr. Young to provide expert testimony in order to sustain his state law (and federal) claims (Doc. 50 at 31-34), the merits of which contention the court discusses later.

immunity to sheriff's jailers" by passing Act 2011-685 which amended Ala. Code § 14-6-1 (1975). *Conner*, 720 F.3d at 1313-14.4 "[T]he Alabama Legislature intended the enactment of § 14-6-1 to correct what it perceived as an incorrect result in Shelley and to legislatively overrule that decision." *Stallworth v. Bibb Cnty., Ala.*, 2014 WL 3540521 at *5 (N.D. Ala.). *See also*, § 36-22-3(b). Therefore, *Lancaster*'s pronouncement of non-deputy jailer's entitlement to absolute immunity is again controlling. 116 F.3d at 1431.

(Doc. 50 at 30-31).

Mr. Young counters that the defense of sovereign immunity is not so entirely absolute and argues, without citing to any on-point authority, that Officers Higgins, Myhrer, Joiner, and Young as well as Sergeant Laatsch should not benefit from the doctrine's protection because they "were not involved in the activities of supervising inmates or otherwise acting as a 'jailer[.]'" (Doc. 52 at 21-22). Thus, Mr. Young seemingly has conceded that Officers Mitchell and Mills are entitled to a sovereign immunity dismissal of his state law claims.

As for Mr. Young's efforts to exclude Officers Higgins, Myhrer, Joiner, and Young as well as Sergeant Laatsch from coverage under the sovereign immunity doctrine, his arguments are only superficially developed and unavailing. However, the court, in independently researching this issue, has found that <u>both sides</u> have missed significant developments in the scope of Alabama's sovereign immunity doctrine. Further, these authorities make it clear that neither "jailers" nor other non-

jailer personnel who work for the Shelby County Sheriff's Department are entitled to benefit from a state sovereign immunity defense.

More specifically, in *LeFrere v. Quezada*, 582 F.3d 1260 (11th Cir. 2009) ("*LeFrere I*"), the Eleventh Circuit acknowledged that several Alabama Supreme Court decisions "cast[ed] doubt on the conclusion . . . reached in *Lancaster*[,]" the key authority upon which Defendants rely. *LeFrere*, 582 F.3d at 1265. In light of this uncertainty, the Eleventh Circuit certified the following question to the Supreme Court of Alabama: "Are jailers, like sheriffs and their deputies, absolutely immune from state claims for money damages based on actions taken within the scope of their employment?" *LeFrere I*, 582 F.3d at 1268-69.

Declining to respond to this specific question posed in *LeFrere I*, the Supreme Court of Alabama supplied an answer in another case–*Ex parte Shelley*, 53 So. 3d 887 (Ala. 2009), as explained by the Eleventh Circuit in *LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009) ("*LeFrere II*"):

> Because of the *Shelley* decision, we now know that our *Lancaster* decision is not an accurate statement of Alabama law. We now know that jailers are not entitled to absolute state immunity under Art. I, § 14 of the Alabama Constitution. Because that is all we need to know to decide this appeal, <u>the Alabama Supreme Court quite understandably and politely declined to answer our certified question in light of its *Shelley* decision</u>. *Quezada v. LeFrere*, No. 1081741 (Ala. Dec. 1, 2009). The *Shelley* decision is the answer to our question.

27

> Because the *Shelley* decision effectively overrules our *Lancaster* decision on the issue of absolute immunity for Alabama jailers facing state law claims, Officer Quezada's motion to dismiss on that ground was properly denied.

*LeFrere II*, 588 F.3d 1318 (emphasis added); *see also Shelley*, 53 So. 3d at 897

(rejecting *Lancaster* and declining to extend state sovereign immunity under § 14 of

the Alabama Constitution to jailers because they are not "an alter ego of the sheriff

as are deputy sheriffs").

Therefore, in light of *Shelley* and *LeFrere II*, *Lancaster* no longer is good law,

and Defendants cannot prevail on their state sovereign immunity defense to Mr.

Young's state law claims, regardless of their positions held and duties performed

within the Shelby County Sheriff's Office, as none of them were employed as deputy

sheriffs. (*See* Doc. 50 at 17-21 ¶¶ 34-52 (describing Defendants' respective positions

within the Shelby County Sheriff's Office)). Accordingly, the sovereign immunity

section of Defendants' Motion is **DENIED**.[12]

## 2.    Expert Testimony

Defendants alternatively contend that a dismissal of Mr. Young's state law

claims is appropriate because he cannot meet his burden of proof absent offering

expert testimony. This section of Defendants' brief only minimally touches upon

---

[12]  Defendants do not assert a state-agent immunity defense under Alabama law.

negligence and wantonness (Doc. 50 at 32), and focuses more on deliberate indifference (Doc. 50 at 32-33), which federal claim this court has already dismissed. Further, this portion of the brief does not ever discuss Count Four of Mr. Young's complaint, wherein he claims intentional infliction of emotional distress.

To the extent that Defendants have developed this contention with respect to Mr. Young's negligence and wantonness claims,[13] the cases cited unpersuasively only underscore general legal principles governing such causes of action. *See, e.g., Hicks v. Vulcan Engineering Co.*, 749 So. 2d 417, 424 (Ala. 1999) ("The mere fact that an accident or injury occurred is no evidence of any negligence by any party . . . ."). Indeed, not one authority stands for the proposition suggested by Defendants–that a plaintiff must proffer expert testimony to prove a claim of negligence or wantonness. Thus, Defendants have fallen woefully short of demonstrating that they are entitled to judgment as a matter of law on Mr. Young's state law counts due to the absence of any expert testimony and, this final part of their Motion is **DENIED**.

## V.    CONCLUSION

For the reasons explained above, Defendants' Motion is **GRANTED IN PART** and otherwise is **DENIED**. The court will set this case for a final pretrial conference

---

[13]  The court notes that Defendants do not pursue this expert witness argument in their reply brief.

by separate order.

      **DONE** and **ORDERED** this the 2nd day of September, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge