FILED

2017 Mar-21  PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

RONNIE GUY YOUNG,      )
                       )
      **Plaintiff,**      )
                       )
**v.**                 )      **Case No.:  2:14-CV-407-VEH**
                       )
                       )
**KIMBERLY MYHRER, et al.,**      )
                       )
      **Defendants.**      )

## MEMORANDUM OPINION ON REMAND

### I.    Introduction and Procedural History

Plaintiff Ronnie Guy Young ("Mr. Young") initiated this civil rights lawsuit on March 7, 2014. On May 30, 2014, Mr. Young filed a first amended complaint (Doc. 10) against the following seven individual defendants who have all been sued in their personal capacities only:  Kimberly Myhrer ("Officer Myhrer"), Ronald Higgins ("Officer Higgins"), Timothy Laatsch ("Sergeant Laatsch"), Shanna Young ("Officer Young"), Matthew Joiner ("Officer Joiner"), David Mitchell ("Officer Mitchell"), and Shane Mills ("Officer Mills") (collectively, the "Defendants"). (Doc. 10 ¶¶ 4-6).

By virtue of the court's prior ruling on summary judgment, Mr. Young's federal counts for deliberate indifference and conspiracy to interfere with civil rights were dismissed with prejudice (Doc. 55 at 24), and only his state law claims for

negligence, wantonness, and the intentional infliction of emotional distress remained in this lawsuit. (*Id.* at 24, 29). Defendants filed an interlocutory appeal on September 18, 2015, challenging the court's rejection of their state sovereign immunity defense raised under the Jailer Liability Protection Act of 2011 (the "Jailer Act") to these state law claims on summary judgment. (Doc. 57).

On July 1, 2016, the Eleventh Circuit reversed this court's sovereign immunity ruling adverse to Defendants and remanded this case for a determination in the first instance:[1]

> [W]hether the individual defendants are entitled to summary judgment on state sovereign immunity grounds under Ala. Code §§ 14-6-1 & 36-22-3(b). It should specifically consider whether the defendants acted in compliance with the law as the amended statutes require, and in so doing will have to address who has the burden on that issue.

(Doc. 63-1 at 9-10). On December 12, 2016, this court entered an order establishing a briefing schedule on the remand issues identified by the Eleventh Circuit under the Jailer Act. (Doc. 64).

Defendants filed their initial brief (Doc. 65) on December 29, 2016. Mr. Young filed his responsive brief (Doc. 66) on January 19, 2017. On January 25, 2017, Defendants replied. (Doc. 67). Having considered the parties' arguments on remand,

---

[1]   As the Eleventh Circuit pointed out, Defendants "did not make any burden-shifting arguments to the district court and we decline to address them for the first time on appeal." (Doc. 63-1 at 9).

2

the court concludes that the sovereign immunity defense afforded to Defendants under the Jailer Act precludes the state law claims that Mr. Young has asserted against them. Therefore, the state law section of the court's previous summary judgment decision (Doc. 55 at 24-29) is due to be vacated. Further, that portion of Defendants' Motion for Summary Judgment (Doc. 49) that deals with Mr. Young's state law claims is due to be treated as one requesting a Rule 12(b)(1) dismissal of those counts on state sovereign immunity grounds. Accordingly, Counts I and II of Mr. Young's lawsuit remain dismissed with prejudice while Counts III and IV are due to be dismissed without prejudice.[2]

## II.   **Factual Background**[3]

Mr. Young has an extensive criminal history in California, having been convicted of assault with a firearm, possession of drugs, and possession of drugs with the intent to distribute. AF No. 1.1.[4] He has spent 18 of his 46 years of life in state

---

[2] Because the court finds that it lacks subject matter jurisdiction over Mr. Young's state law claims on sovereign immunity grounds, it does not reach the merits of Defendants' expert testimony contentions previously raised as an alternative basis for summary judgment, but not actively pursued on remand.

[3] As no party has challenged the court's factual background previously used on summary judgment (Doc. 55 at 9-17), the court restates those same facts on remand. However, this statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[4] The designation "AF" stands for admitted fact and indicates a fact offered by Defendants that Mr. Young has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case. Under appendix II of the

prisons in California. AF No. 1.2. Although born and raised in California, he has family in Shelby County, Alabama. AF No. 2.

In 2011, Mr. Young was convicted in California of distribution of methamphetamines and received a sentence of either four years of incarceration or participation in an in-house drug program. AF No. 3.1. Mr. Young participated in the program for approximately one and a half months, at which time he fled to Alabama. AF No. 3.2.  A fugitive from justice warrant was issued by California Department of Corrections on February 13, 2012 for the arrest of Mr. Young. AF No. 4.

On December 28, 2009, James Wesley Howard ("Mr. Howard") was arrested and charged with the murder of Kara Nichole Lee ("Kara Lee"), and was incarcerated in the Shelby County Jail pending trial for capital murder. AF No. 5.1. Kara Lee was approximately 2 years old at the time of her death and Mr. Howard was the boyfriend

---

court's uniform initial order (Doc. 4) entered on March 10, 2014, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). For Mr. Young, more specifically, this means that "[a]ny statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based." (*Id.* at 17). Consequently, whenever Mr. Young has inadequately asserted a dispute over a fact that Defendants have otherwise substantiated with an evidentiary citation, the court has reviewed the cited evidence and, if it in fact fairly supports Defendants' factual assertion, has accepted Defendants' fact. On the other hand, whenever Mr. Young has adequately disputed a fact offered by Defendants, the court has reviewed the evidence cited by Mr. Young and, if it in fact fairly supports Mr. Young's factual assertion, has accepted Mr. Young's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendants' statement of undisputed facts as set forth in Doc. 50 and responded to by Mr. Young in Doc. 52. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 1.2) would indicate the second sentence of paragraph 1 of Defendants' facts is the subject of the court's citation to the record.

of Kara Lee's mother, Britany Lee. AF No. 5.2. Mr. Young's nephew, William Young, Jr., ("William Young") was the father of Kara Lee. AF No. 5.3. While Mr. Young was in Alabama as a fugitive from California, he spoke with William Young several times about Mr. Howard, and during these conversations William Young told Mr. Young that Mr. Howard was incarcerated in the Shelby County jail. AF No. 6.

On the early morning hours of March 9, 2012, Mr. Young was arrested by the U.S. Marshal's Service at the home of his brother, George Young, in Shelby, Alabama. AF No. 7. Mr. Young was transported to the Shelby County jail and booked in on March 9, 2012. AF No. 8.1. The booking officers received a report that Mr. Young was a known felon, gang member, had a history of carrying a gun, assaulting police officers, and was an escape risk. AF No. 8.2. It was also reported that Mr. Young had claimed to be a member of the Southern Brotherhood, a white supremacist gang. AF No. 8.3.

During the booking process, an Inmate Questionnaire (the "Questionnaire") was completed which Mr. Young signed. AF No. 9.1; (*see also* Doc. 51-11 at 4 at 10 (Officer Higgins's answering affirmatively that he was the officer who asked Mr. Young the questions on the Questionnaire)). Question number 25 asked Mr. Young if he was "aware of any reason [he] should be separated from another inmate while [he] is here?" to which Mr. Young responded "no". AF No. 9.2. Officer Higgins

asked Mr. Young the questions verbatim as set out on the Questionnaire, and marked down Mr. Young's responses. AF No. 9.3; (*see also* Doc. 51-11 at 4 at 11 (Officer Higgins's testifying that "Sergeant Myers told me that you are to ask each question verbatim to the inmate, and that's how I asked them, verbatim")). Further, Mr. Young signed the Questionnaire attesting to the accuracy of the information. AF No. 9.3. Additionally, at no time did Mr. Young inform the booking officers about his adverse affiliation with Mr. Howard or otherwise indicate that he should be separated from Mr. Young.[5] AF No. 9.4.

Mr. Young testified that he heard the [Deputy] U.S. Marshal state to the booking officers that he was to remain in isolation, as opposed to being placed in the general population. (Doc. 52 at 6 ¶ 10). Initially, Officer Myhrer placed Mr. Young in administrative segregation. AF No. 10.

On March 10, 2012, Officer Joiner classified Mr. Young as a maximum security inmate based on his extensive history of assaultive behavior and on the

---

[5] While Defendants factually suggest that none of them had any knowledge of Mr. Young's adverse affiliation with Mr. Howard, Mr. Young objects to this particular fact and points out in his opposition (Doc. 52 at 6 ¶ 9) that Defendants' evidentiary citations are limited to the sworn testimony from two of the seven Defendants. Officer Myhrer testified during her deposition that on the date Mr. Young was booked, "we didn't know he had any relation with Mr. Howard[,]" but does not specify who "we" are. (Doc. 51-10 at 11 at 39). Sergeant Laatsch similarly testified that, "[a]t no point were we made aware of [Mr. Young's] affiliation with [Mr.] Howard." (Doc. 51-13 at 27 at 101). At the same time, there is no evidence contained in the record from which a reasonable jury could conclude that one or more of the remaining five Defendants actually had prior individualized knowledge of the potential conflict between Mr. Young and Mr. Howard.

reports from the arresting officers. AF No. 11.1. However, Officer Joiner could not confirm these claims through the National Crime Information Center, and therefore the classification evaluation of Mr. Young continued. AF No. 11.2.

On March 12, 2012, Sergeant Laatsch continued to investigate Mr. Young's criminal and behavioral history in order to further assess his classification status. AF No. 12.1. Due to the fact that Sergeant Laatsch had received conflicting reports as to Mr. Young's criminal history and since he could not confirm the charges of assaults against officers and escape attempts, Sergeant Laatsch had Mr. Young moved from an administrative segregation cell to Unit B-3, which is a single person lockdown cell. AF No. 12.2.

On the morning of March 14, 2012, Sergeant Laatsch continued his investigation into the behavioral reports concerning Mr. Young. AF No. 16.1. He was unsuccessful in confirming that Mr. Young was an escape risk and had a violent history toward correction staff while at previous institutions. AF No. 16.2. He further reviewed Mr. Young's history and considered a report from Sergeant Dixon[6] of his interview of Mr. Young. AF No. 16.3. Sergeant Dixon had reported to Sergeant Laatsch that Mr. Young did not deny some of his past aggressive behavior but declared that he was not like that anymore. AF No. 16.4. Based on the prior charges

---

[6] Mr. Young has not sued Sergeant Dixon.

of kidnapping first and an aggravated assault from California, Sergeant Laatsch took into consideration the behavioral reports on Mr. Young to classify him with a medium designation instead of continuing to keep him in segregation. AF No. 16.5.

In the afternoon of March 14, 2012, prior to the end of his shift, Sergeant Laatsch sent an email to Officer Joiner informing him that he was unable to complete three inmate housing moves during the day shift, and for Officer Joiner to make these moves during his shift if he had the time. AF No. 17.1. One of these housing moves was for Mr. Young to be moved from his B3 single cell to Pod A, Block 6. AF No. 17.2. Pod A, Block 6 (A-6) houses both maximum and medium security inmates having a history of assaultive behavior. AF No. 18.

Pod A is comprised of a number of cell blocks. AF No. 19.1. Each block contains a number of cells. AF No. 19.2. In the center of the pod is a tower manned by a correctional officer, with a view into each block. AF No. 19.3. There are two additional officers assigned to the pod who act as rovers throughout the pod. AF No. 19.4.

Each block surrounding the tower is triangular in shape. AF No. 19.5. A-6 is comprised of a large room with tables, chairs, phones, a television, and showers, referred to as the "dayroom". AF No. 19.6. Along the back wall of the block are two-man cells, configured in a lower and upper level. AF No. 19.7. The cell doors

routinely remain open during the day so that inmates can utilize the dayroom and go to and from their cells. AF No. 19.8.

Each block is monitored by a closed circuit camera which feeds into the tower. AF No. 20.1. Each block is also equipped with an intercom system which an inmate can use to communicate directly with the tower guard. AF No. 20.2.

Mr. Howard was housed in A-6. AF No. 21.1. Within a few minutes of Mr. Young entering A-6, Mr. Howard approached Mr. Young and introduced himself to him. AF No. 21.2. Mr. Young confronted Mr. Howard with the death of his great niece, and the two began to argue in the dayroom. AF No. 21.3.

Mr. Young accused Mr. Howard of killing his niece, to which Mr. Howard responded that he was innocent and had paperwork in his cell showing that the DNA results were inconclusive. AF No. 22.1. Mr. Howard left the dayroom and went up the steps to his cell located on the upper level. AF No. 22.2. Mr. Young followed Mr. Howard up the steps to Mr. Howard's cell. AF No. 22.3.

Immediately after Mr. Howard entered his cell, he bent down next to his bunk and started going through his paperwork. AF No. 23.1. While Mr. Young was standing beside and over Mr. Howard, Mr. Young began punching Mr. Howard in the head. AF No. 23.2. Mr. Howard retaliated and punched Mr. Young several times, knocking him to the floor. AF No. 23.3. Mr. Howard kicked Mr. Young several times

and then left the cell. AF No. 23.4.

Mr. Young was taken to the jail medical unit and then transferred to the Shelby Baptist Medical Center. AF No. 24.1. From there he was transported to UAB Hospital. AF No. 24.2.

While Mr. Young criticizes its thoroughness (Doc. 52 at 8 ¶ 25), an investigation into the fight took place, including a recorded interview of Mr. Young. AF No. 25.1. During the interview, Mr. Young claimed not to remember any details of the fight and that his last memory was of him packing his belongings to move from B-3 to A-6. AF No. 25.2. Additionally, Mr. Young admitted in the interview that he knew Mr. Howard was in the Shelby County jail and further admitted that he did not inform the correctional officers of his relationship to Mr. Howard or that he should be separated from Mr. Howard. AF No. 26.

On multiple occasions prior to his fight with Mr. Howard, Mr. Young had the opportunity to inform the jail guards of his adverse affiliation with Mr. Howard and yet he never did this. AF No. 32.1. More specifically, Mr. Young interacted with the guards on a routine basis throughout the day, including being escorted by guards to the shower and being served meals. AF Nos. 32.2, 32.3, 32.4. Additionally, Mr. Young could have informed Sergeant Dixon about his knowledge of Mr. Howard while being interviewed, but failed to do so. AF No. 32.5.

Mr. Young also could have brought the potential conflict issue to Defendants' attention when he was being moved, but instead he remained silent and never informed any Defendants (or other correctional personnel) about this combustible relationship. AF Nos. 32.6, 32.7. Finally, Mr. Young also could have alerted the tower guard via the intercom system in the dayroom that he should not be housed in the same block as Mr. Howard, once he realized his presence. AF No. 32.8. Instead, Mr. Young followed Mr. Howard to Mr. Howard's cell and instigated a physical fight with him. AF No. 32.9.

On March 16, 2012, Mr. Young was returned back to the jail from UAB Hospital, and then was extradited to California on March 27, 2012, to serve out his sentence. AF No. 27.

## III.   Standards

### A.   Rule 12(b)(1) Generally

As the Eleventh Circuit has explained the standard on motions to dismiss for lack of subject matter jurisdiction:

> Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. Facial attacks" on the complaint "require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Factual attacks,"

on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion-the court must consider the allegations of the complaint to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981). But when the attack is factual,

> the trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* at 412-13 (quoting *Mortensen*, 549 F.2d at 891).

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (emphasis added).

Here, the jurisdictional attack by Defendants on Mr. Young's state law claims is factual.

## B.    State Sovereign Immunity Generally

As the Eleventh Circuit set forth the Alabama sovereign immunity doctrine in *Lancaster v. Monroe County*, 116 F.3d 1419 (11th Cir. 1997), *abrogation on other grounds as recognized by Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016):

"[U]nder Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996) *cert. denied*, (June 27, 1997) (No. 96–1756). The source of absolute sovereign immunity is Article I, § 14 of the Alabama Constitution of 1901, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." That provision bars any suit against the state of Alabama or its agencies. *See Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989). That provision also grants immunity to state officers and employees in their official and individual capacities, when the action is, in reality, a suit against the state. *See id*. . . .

In deciding whether an action against a state officer is, in fact, an action against the state, Alabama law instructs us to consider the nature of the action and the relief sought. *See Phillips*, 555 So. 2d at 83. According to *Parker v. Amerson*, if the "nature of the action" is a suit against a state official for the negligent performance of his statutory duties, that action is in reality a suit against the state. *See* 519 So. 2d at 446. It does not matter, either, that Ms. Lancaster seeks only damages from the individual defendants. The same relief was sought from the deputy sheriff in *Alexander*; nevertheless, the Alabama Supreme Court treated the suit as one against the state. *See Alexander*, 652 So. 2d at 1143-44.

*Lancaster*, 116 F.3d at 1430-31 (emphasis added); *see also McMillian v. Johnson*, 101 F.3d 1363, 1365 ("Notwithstanding this confusing language in *Tinney*, the holding of the case is clear:  under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity.").

Additionally, a sovereign immunity dismissal based upon § 14 of the Alabama Constitution is a jurisdictional one. *See, e.g., Ex parte Davis*, 9 So. 3d 480, 483 (Ala. 2008) ("Because the original complaint purported to state a cause of action against

Davis and Isaacs in violation of § 14, Alabama Constitution of 1901, <u>the trial court</u> <u>did not acquire subject-matter jurisdiction</u> over the claims against the deputies when the original complaint was filed." (emphasis added) (citing *Ex parte Blankenship*, 893 So. 2d 303, 306-07 (Ala. 2004))); *Blankenship*, 893 So. 2d at 306-07 ("Because the complaint [against a deputy sheriff] purported to effect an action against the State in violation of § 14, Ala. Const. 1901, the trial court acquired no subject-matter jurisdiction over this action."); *Blankenship*, 893 So. 2d at 307 (pointing out that when the trial court lacks subject matter jurisdiction, it "take no action other than to exercise its power to dismiss the action . . . ." (internal quotation marks omitted) (quoting *State v. Property at 2018 Rainbow Drive*, 740 So. 2d 1025, 1029 (Ala. 1999))); *Ex parte Alabama Dep't of Transp.*, 978 So. 2d 17, 26 (Ala. 2007) ("Thus, this Court cannot order the trial court to allow Good Hope to amend its complaint because the trial court lacks subject-matter jurisdiction [due to sovereign immunity]."); *cf. Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) (recognizing that sovereign immunity under Alabama law "is immunity from suit, not merely a defense from liability").

Further, whenever a district court agrees that sovereign immunity divests it from having subject matter jurisdiction over a claim, granting relief in the form of summary judgment is error; instead, the court must dismiss without prejudice

pursuant to Rule 12(b)(1). *See Stanley v. Cent. Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981) ("Accordingly, we conclude that the court below erred in granting summary judgment in favor of the United States [on the basis of sovereign immunity] and should have dismissed the case for lack of subject matter jurisdiction.");[7] *see also Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." citing *Crotwell v. Hockman–Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984))); *Stalley*, 524 F.3d at 1235 ("affirming district court dismissal for lack of jurisdiction but reversing for entry of dismissal "without prejudice" on remand rather than "with prejudice" as originally and erroneously entered); *Blankenship*, 893 So. 2d at 307 (issuing writ of mandamus to trial court directing it "to enter an order dismissing the action for lack of subject-matter jurisdiction" on the basis of deputy sheriff's state sovereign immunity).

## C.    Alabama's Jailer Act Specifically

In its reversal of this court, the Eleventh Circuit described the history leading up to the passage of the Jailer Act:

---

[7]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Under Article I, § 14 of the Alabama Constitution, the State of Alabama is immune from suit, and that sovereign immunity extends to Alabama sheriffs "when they are executing their law enforcement duties." *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 793 (1997). In *Hereford v. Jefferson County*, 586 So. 2d 209 (Ala. 1991), the Alabama Supreme Court held that deputy sheriffs are immune from suit to the same extent as sheriffs because "the deputy sheriff is the alter ego of the sheriff." *Id.* at 210. *But in Ex parte Shelley*, 53 So. 3d 887 (Ala. 2009), the Alabama Supreme Court refused to extend the scope of state sovereign immunity further. There, the Alabama Supreme Court explained that the jailers working for a sheriff's office "cannot properly be viewed in legal contemplation as an extension of the sheriff or as one officer with the sheriff." *Id.* at 898 (internal quotation marks omitted). Under the Alabama Constitution, therefore, jailers (unlike sheriffs and deputy sheriffs) are not entitled to immunity from suits against them in their individual capacities for money damages. *See id.*

In June of 2011, shortly after the *Ex parte Shelley* decision was issued, the Alabama Legislature enacted the Jailer Liability Protection Act, No. 2011-685, which amended Ala. Code §§ 14-6-1 & 36-22-3 to provide immunity for jail personnel.

(Doc. 63-1 at 3-4).

As a result of the Jailer Act's passage, Ala. Code § 14-6-1 now reads:

The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, <u>as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law</u>.

Ala. Code § 14-6-1 (emphasis added).

The related statutory counterpart that discusses the duties of the sheriff similarly provides as a subpart:

> Any of the duties of the sheriff set out in subsection (a) or as otherwise provided by law may be carried out by deputies, reserve deputies, and persons employed as authorized in Section 14-6-1 as determined appropriate by the sheriff in accordance with state law. Persons undertaking such duties for and under the direction and supervision of the sheriff shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, <u>as long as he or she is acting within the line and scope of his or her duties and is acting in compliance with the law</u>.

Ala. Code § 36-22-3(b) (emphasis added).

## IV.    Analysis

### A.    Mr. Young's Conceded/Abandoned Claims

In his brief, Mr. Young expressly "concedes that he does not have a cognizable cause of action against Officer Ronald Higgins, who was being trained as a booking officer by Officer Myhrer and only asked Plaintiff questions on an intake questionnaire." (Doc. 66 at 20).[8] Further, Mr. Young implicitly concedes or has abandoned the right to assert state law claims Officers Mitchell and Mills by omitting any analysis of their actions as being inconsistent with the requirements for coverage under the Jailer Act. (*See, e.g.*, Doc. 66 at 17-20 (discussing conduct of Officers Young, Myhrer, and Joiner and Sergeant Laatsch only)); (*id.* at 20 ("Plaintiff brought

---

[8] All page references to Doc. 66 correspond with the court's CM/ECF numbering system.

forth substantial evidence indicating that each of <u>the remaining four Defendants</u> were not in compliance either with recognized common law principles or the policies and procedures identified in the Classification Handbook.") (emphasis added)); (*see also* Doc. 67 at 3 n.1 (Plaintiff now affirms that he abandoned his state-law claims against Officers Mitchell and Mills in response to Defendants' motion for summary judgment . . . .")).[9]

Therefore, all state law claims asserted against Officers Higgins, Mitchell, and Mills are due to be dismissed on sovereign immunity grounds as conceded or abandoned by Mr. Young. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Hudson v. Norfolk Southern Ry. Co.,*

---

[9] All page references to Doc. 67 correspond with the court's CM/ECF numbering system.

209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned. (citing *Dunmar*, 43 F.3d at 599); *cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

## B.     Mr. Young's Contested Claims

### 1.     Acting Within the Line and Scope of Duties

Mr. Young's contested state law claims against the remaining four Defendants–Officers Young, Myhrer, and Joiner and Sergeant Laatsch–require this court to determine the scope of, and apply, sovereign immunity under the Jailer Act. As set out above, jailers are covered under the Jailer Act so long as two conditions are present:  they are "acting within the line and scope of their duties and are acting in compliance with the law." Ala. Code §§ 14-6-1, 36-22-3(b). Concerning the first prong, Defendants have stated on remand that they previously developed uncontested evidence that "was required to satisfy the burden [that Mr. Young] represented was

19

necessary for Defendants to invoke the privilege of sovereign immunity . . . ." (Doc. 65 at 18-19).[10] In response, Mr. Young "does not dispute that the individual defendants were 'acting within the line and scope of [their] duties'; thus, the remaining issue is whether they were acting 'in compliance with the law.'"[11] (Doc. 66 at 9).

### 2. Acting in Compliance With the Law

### a. Decisions Reached by Other Courts

Based on the parties' briefs and this court's related research, what the "acting in compliance with the law" component means under the Jailer Act remains an open question under Alabama and Eleventh Circuit law. Several district courts that have addressed this phrase are in agreement that the language must mean more than just a restatement of the Jailer Act's first prong; otherwise, the phrase would be superfluous. *See, e.g., Sawyer v. Collins*, No. CIV. A. 12-0020-KD-M, 2012 WL 6046019, at *10 (S.D. Ala. Nov. 2, 2012) [hereinafter *Sawyer R&R*] ("The Court … finds that such an interpretation would render the second requirement of no moment as the requirement has already been stated."), *report and recommendation adopted*

---

[10] All page references to Doc. 65 correspond with the court's CM/ECF numbering system.

[11] Because Mr. Young concedes that Defendants' proof satisfies the line-and-scope prong, the court does not need to address which party has the burden of proof on this particular component of the Jailer Act and expresses no opinion as to the correctness of the approach followed by the parties on this particular undisputed prong.

*after certified question declined*, No. CIV. A. 2:12-0020-KD, 2013 WL 2458458 (S.D. Ala. June 6, 2013); *Hobbs v. Powell*, 138 F. Supp. 3d 1328, 1337 (N.D. Ala. 2015) ("However, acting within the line and scope of one's duty is not enough to guarantee immunity, as immunity is also conditioned on 'acting in compliance with the law.'"). Such a repetitive interpretation would also contradict fundamental principles of statutory construction under Alabama law. *See, e.g., Ex parte Uniroyal Tire Co.*, 779 So. 2d 227, 236 (Ala. 2000) ("'There is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used'" (quoting *Sheffield v. State*, 708 So. 2d 899, 909 (ALA. CRIM. APP. 1997))), *overturned on other grounds due to legislative action of Alabama Sp. Sess. Act 2001-1113*; *see also Ex parte Darnell*, 262 Ala. 71, 81, 76 So. 2d 770, 778 (1954) ("In determining this question we must look to the statute and in construing the statute we must certainly give effect to each part of the statute, if possible, without doing violence to some other portion of the law.") (emphasis added).

As one court has aptly described the statutory conundrum contained in the Jailer Act by virtue of the "law" clause:

> What the Alabama legislature intended this phrase to mean is unclear and something of a riddle. While courts are required to construe

21

> statutes in a way that gives meaning to every part of the statute, it seems unnecessary to extend immunity to jailers if it applies only in those instances when they are acting "in compliance with the law." If the jailer is acting "in compliance with law," it seems unlikely that he can be civilly liable for his acts, but if he does not act "in compliance with the law," (that is, when he has done something that may expose him to civil liability), he loses the immunity.

*Bell v. Advanced Correctional Healthcare, Inc.*, No. 2:16-CV-0278-TMP, 2016 WL 7242170, at *5 (N.D. Ala. Dec. 14, 2016). Thus, the plain meaning rule is inapplicable in this situation and this court must construct the meaning of the "law" prong. *Cf. City of Bessemer v. McClain*, 957 So. 2d 1061, 1074 (Ala. 2006) (explaining that "[i]f, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction" (citing *Ex parte Waddail*, 827 So. 2d 789, 794 (Ala. 2001))).

This "in compliance with the law" language "do[es] not appear in the bill, as it was initially introduced, for either statute." *Sawyer R&R*, 2012 WL 6046019, at *10 Unfortunately, the legislative history for both code sections lack "information as to how th[is] amendment[] w[as] formed or came to be part of the bill." *Sawyer R&R*, 2012 WL 6046019, at *10.

In *Sawyer v. Collins*, No. 2:12-0020-KD-M, 2012 WL 6052000 (S.D. Ala. Dec. 5, 2012) [hereinafter *Sawyer Certified*], the Southern District of Alabama certified the following question to the Supreme Court of Alabama:

> Alabama Code § 14-6-1 provides that persons, such as jail employees, who act or undertake duties at the direction and supervision of the sheriff are immune from state law claims to the same extent as a Sheriff "as long as he or she is acting within the line and scope of his or her duties and is acting in compliance with the law". How should this court interpret "acting in compliance with the law" in order to not render the grant of immunity meaningless or the phrase superfluous? Specifically, what "law" is encompassed by the requirement that a jail employee act in compliance with the law?

*Sawyer Certified*, 2012 WL 6052000, at *2. Although the Supreme Court of Alabama "initially accepted the question certified to it by the United States District Court for the Southern District of Alabama . . . ." it subsequently declined to provide an answer. *Sawyer v. Collins*, 129 So. 3d 1004, 1004 (Ala. 2013).[12]

In Justice Shaw's dissenting opinion to the Supreme Court of Alabama's decision not to answer the *Sawyer Certified* question, he opined:

> It seems axiomatic that both criminal statutes and civil statutes, as well as constitutional precepts, are "the law" for purposes of § 14-6-1. It is apparent that the district court seeks to know whether, as Sawyer suggests, policies and procedures for handling sick inmates propounded

---

[12] Similarly, in *Johnson v. Conner*, 720 F.3d 1311, 1316 (11th Cir. 2013), the Eleventh Circuit certified two questions to the Supreme Court of Alabama about:  (i) the meaning of the "law" prong under the Jailer Act; and (ii) the retroactivity of the Act. The Supreme Court of Alabama declined to answer either one. *See Johnson v. Conner*, 754 F.3d 918, 919 n.1 (11th Cir. 2014) ("Federal courts have twice certified questions about amended § 14-6-1's applicability to the Alabama Supreme Court, and the Alabama Supreme Court has twice declined to rule. *Johnson v. Conner*, No. 1121178 (Ala. Oct. 31, 2013); *Sawyer v. Collins*, 129 So. 3d 1004, 1004 (Ala. 2013)."). Because the Eleventh Circuit decided the *Johnson* appeal on the non-retroactivity of § 14-6-1, as amended, it became unnecessary to address what "in compliance with the law" means under the Jailer Act. *See Johnson*, 754 F.3d at 923 ("apply[ing] the law at the time of Appellee's injury, and hold[ing] that Appellants cannot claim immunity under the amended § 14-6-1."); *see also Ex parte Burnell*, 90 So. 3d 708, 714 n.2 (Ala. 2012) (indicating that amended §§ 14-6-1 and 36-22-3 "are not applicable in this case" involving an inmate incident occurring in 2007).

> by a sheriff are, for purposes of § 14-6-1, "law" that must be followed
> by jailers acting for and under the direction and supervision of the
> sheriff. The answer to that query has not been decided by an Alabama
> court, and it is clearly an issue an Alabama court should be the first to
> decide. To answer this question, this Court does not need to know the
> content of any policies or procedures Sheriff Hood has issued. And the
> principles for determining whether any such policies and procedures
> have the force of law or legal effect are settled.

*Sawyer*, 129 So. 3d at 1006-07 (emphasis added) (Shaw, J., dissenting). Upon the

case's return to federal court, the district court accepted the magistrate judge's

recommendation, 2013 WL 2458458, at *1, that the defendants could not satisfy the

second prong of the Jailer Act without having to decide whether "acting in

compliance with the law" included the obligation to follow "nondiscretionary orders,

rules, regulations, statutes, checklists, and/or policies[.]" *Sawyer R&R*, 2012 WL

6046019, at *10 (internal quotation marks omitted).

> The Court reaches no particular finding with regard to this
> argument. However, the Court finds that Defendants Sanders and
> Collins have not met the second requirement of the statutes. This
> conclusion is reached after noting that the Court has already determined
> that a jury could find that Defendants were deliberately indifferent to
> Water's serious medical needs, rendering, at best, grossly inadequate
> care, violating the Inmate's clearly established rights to medical
> treatment. The Court finds that a jury finding that Sanders and Collins
> violated the Eighth Amendment, most likely, is not what the drafters of
> §§ 14-6-1 and 36-22-3 had in mind when they required that sheriff's
> employees "act[ ] in compliance with the law."

> Therefore, the Court specifically finds that the statutes in
> question, Ala. Code §§ 14-6-1 and 36-22-3, do not deprive this Court of
> subject-matter jurisdiction. With that finding, it is recommended that

> Defendants' Sanders and Collins Motion to Dismiss the common law
> negligence claim against them be denied.

*Sawyer R&R*, 2012 WL 6046019, at *11 (emphasis added). Thus, because the

plaintiff in *Sawyer* had a viable deliberate indifference claim under the Eighth

Amendment, the jailers were not acting in compliance with the law and the plaintiff's

common-law negligence claim was not subject to a jurisdictional dismissal on

sovereign immunity grounds.

More recently, in *Hobbs v. Powell*, 138 F. Supp. 3d 1328 (N.D. Ala. 2015),

another judge sitting in the Northern District of Alabama addressed the meaning of

this second prong in the context of a wrongful death claim that was challenged by the

defendant jailers in a motion to dismiss under Rule 12(b)(1) and 12(b)(6). After first

determining that Ala. Code § 14-6-1, as amended, was constitutional, "the remaining

question [wa]s whether defendant jailers [we]re entitled to the immunity granted to

jail personnel by Ala. Code § 14-6-1." *Hobbs*, 138 F. Supp. 3d at 1337. In denying

the defendant jailers' immunity defense, the *Hobbs* court discussed the various parts

of the *Sawyer* case history and, in particular, explained:

> Unlike in *Sawyer* where the court faced the question of whether
> "policies and procedures for handling sick inmates propounded by a
> sheriff are, for purposes of § 14–6–1, 'law' that must be followed by
> jailers acting for and under the direction and supervision of the sheriff,"
> *id.* this case involves the potential violation of a constitutional right and
> a civil statute guaranteeing medical care. *See* U.S. amend. VIII; Ala.
> Code § 14-6-19 ("Necessary clothing and bedding must be furnished by

the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and *also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves*. ") (emphasis added). <u>The law defendant jailers allegedly violated seems to squarely fall within Justice Shaw's definition of "the law" for purposes of § 14-6-1.</u>

*Hobbs*, 138 F. Supp. 3d at 1339 (emphasis by underlining added). Thus, because the plaintiff had not only a cognizable deliberate indifference claim, but also an underlying state statute regarding medical care that the defendant jailers had arguably violated, the *Hobbs* court concluded that the Jailer Act did "not deprive the court of subject matter jurisdiction over plaintiff's state law claim [for wrongful death] against defendant jailers . . . ." *Id.* at 1340; *see also Johnson v. Milliner*, 65 F. Supp. 3d 1295, 1305 (S.D. Ala. 2014) ("The statutory immunity in Ala. Code § 14-6-1 and Ala. Code § 36-22-3 does not extend to the circumstance where the person employed by the Sheriff was not acting within the line and scope of their duties and was not acting in compliance with the law."); *Milliner*, 65 F. Supp. 3d at 1305 (denying immunity under Jailer Act when material factual dispute exists over whether defendant has violated plaintiff's <u>constitutional</u> rights).

> **b.     Committing Torts or Violating Policies and Procedures, Without More, Does not Disqualify Defendants from Sovereign Immunity under the "Law" Prong.**

Mr. Young argues in his brief that the "law" prong removes immunity

protection for the remaining Defendants because they "violated their own agency's policies and procedures, as well as the laws of negligence, wantonness, and intentional infliction of emotional distress. . . . [and that] the individual defendants must therefore prove by a preponderance of the evidence that they did not violate those laws." (Doc. 66 at 11). As an initial matter, the court disagrees with Mr. Young's reliance upon acts of negligence, wantonness, and intentional infliction of emotional distress, without more, as adequate examples of the relevant "law" under the disputed Jailer Act prong. The cases discussed above certainly do not embrace that suggested construction of the Jailer Act. Moreover, Mr. Young has offered no authority which even arguably supports such a strained view of the "law" prong. *See Ex parte Watley*, 708 So. 2d 890, 892 (Ala. 1997) ("It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result . . . ." (internal quotation marks omitted) (quoting *Ex parte Meeks*, 682 So. 2d 423, 428 (Ala. 1996)) (in turn quoting Norman J. Singer, *Sutherland Statutory Construction* § 45.11, p. 61 (5th ed. 1993))); *cf. McClain*, 957 So. 2d at 1075 ("If a literal construction would produce an absurd and unjust result that is clearly inconsistent with the purpose and policy of the statute, such a construction is to be avoided.").

Instead, consistent with the above persuasive authorities, this court concludes that § 14-6-1, as amended, provides sovereign immunity to jailers for all state law torts (just like sheriffs and sheriff deputies) so long as those jailers are acting within the line and scope of their duties and they are complying with criminal statutes, civil statutes, and constitutional standards. In this court's view, if a case has reached the dispositive motions phase, only when sufficient evidence exists that a jailer has violated a criminal statute, a civil statute, or a constitutional principle[13] does he lose the Jailer Act's sovereign immunity protection and become subject to Alabama tort laws. *See, e.g., Hobbs*, 138 F. Supp. 3d at 1339-40 (holding that potential violations of Eighth Amendment and Ala. Code § 14-6-19 (duty to provide clothing, bedding, and medical attention to prisoners) removes jailer's sovereign immunity protection and allows plaintiff to pursue wrongful death action). Put differently, it would be a tortured construction of the Jailer Act to find that simply upon a plaintiff's assertions of negligent conduct, a jailer would lose his sovereign immunity protection and the court would have subject matter jurisdiction over the plaintiff's negligence claim. The court now turns to the thornier issue of whether non-compliance with policies and procedures can similarly strip away sovereign immunity.

Mr. Young refers to *Black's Law Dictionary* as a source for defining the term

---

[13]  Or acts outside of the line and scope of his authority.

"law" to include "administrative agency rules and regulations." (Doc. 66 at 10 (internal quotation marks omitted) (quoting *Black's Law Dictionary* (5th ed. 1979))). However, Mr. Young has not cited any case in which any court has determined that a jailer who has intentionally or unintentionally violated policies and procedures in carrying out his sheriff-related duties is precluded from sovereign immunity protection under the "law" prong of the Jailer Act.

In both *Sawyer* and *Hobbs*, the plaintiffs (unlike Mr. Young) persevered at the pleadings stage in light of each one having a cognizable deliberate indifference claim. The *Hobbs* plaintiff had the additional statutory duties provided under Ala. Code § 14-6-19, as part of his "law" prong arsenal. At the same time, this court has been unable to find a decision in which a court has held that reliance upon policies and procedures as the "law" is foreclosed under the Jailer Act. Further, *Hobbs* hinted in *dicta* that non-compliance with policies and procedures might remove a jailer's sovereign immunity shield. *See Hobbs*, 138 F. Supp. 3d at 1339 ("The plain language of the statute requires jail personnel to act in compliance with the law to receive the protection of § 14-6-1 immunity, and <u>the statute does not limit that requirement to compliance with only certain types of law</u>.") (emphasis added). *Hobbs*'s *dicta* is the closest persuasive authority that Mr. Young has, but this court is not persuaded by *Hobb*'s commentary on an issue that was not key to its holding.

Therefore, in the absence of legislative history, a statutory amendment, or an Alabama Supreme Court case confirming that compliance with the law includes adhering to policies and procedures governing jailers, *cf. Sawyer*, 129 So. 3d at 1006 ("The answer to that query has not been decided by an Alabama court, and it is clearly an issue an Alabama court should be the first to decide."), this court rejects Mr. Young's position that the "law" prong rightfully closes the sovereign immunity door on those jailers whose actions merely deviate from policies and procedures. In fact, under Mr. Young's expansive interpretation of the "law" prong, a jailer who failed to follow policies and procedures would be treated with a degree of protection from litigation that is more consistent with Alabama's state agent immunity doctrine rather than the broad scope of sovereign immunity afforded to sheriffs and sheriff deputies.

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . (3) discharging duties imposed on a department or agency by statute, rule, or regulation, <u>insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner</u>; . . . .

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency <u>require otherwise</u>; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*See Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (plurality opinion) (emphasis by underlining added), *holding for category (4) of Cranman modified by Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006);[14] *see also Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000) ("We today adopt this new test suggested in *Cranman*.").

Such an incongruous result would substantially undermine the overall legislative purpose of the Jailer Act–to cloak jail personnel with the same (or nearly the same) level of sovereign immunity as is enjoyed by Alabama sheriffs and sheriff deputies. *See* Ala. Code § 14-6-1 ("Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901 . . . .") (emphasis added); *Ex parte McCall*, 596 So. 2d 4, 6 (1992) ("The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute." (citing *Clark v. Houston County Comm'n*, 507 So. 2d 902, 903 (Ala. 1987))); *Darks Dairy, Inc. v.*

---

[14] As confirmed by the Alabama Supreme Court in the *Hollis* opinion, the defendant has the initial burden to show that he fits into one of the five *Cranman* immunity categories. After that, the burden shifts to the plaintiff to show that one of the exceptions to state agent immunity exists. *See Hollis*, 950 So. 2d at 306 (agreeing with pre-*Cranman*'s description of burdens as stated in *Ex parte Davis*, 721 So. 2d 685 (Ala. 1998)).

*Alabama Dairy Comm'n*, 367 So. 2d 1378, 1380 (Ala. 1979) (internal citation omitted) ("In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses . . . ."); *see also Stallworth v. Bibb Cnty.*, No. 7:14-CV-410-RDP, 2014 WL 3540521, at *5 (N.D. Ala. July 16, 2014) ("[T]he Alabama Legislature intended the enactment of § 14-6-1 to correct what it perceived as an incorrect result in *Shelley* and to legislatively overrule that decision."); *Stallworth*, 2014 WL 3540521, at *5 (concluding that "based upon a straight forward application of § 14-6-1, Defendants Poole and Goodwin [who were acting as deputies and/or jailers] are absolutely immune from Plaintiff's state law claims" without ever analyzing the meaning of the "law" prong or indicating which party bears the burden of proving compliance or non-compliance); *Redding v. Dale Cty.*, No. 1:15-CV-539-MHT-PWG, 2016 WL 1243241, at *7 (M.D. Ala. Mar. 14, 2016) (same), *amended report and recommendation adopted*, No. 1:15CV539-MHT, 2016 WL 1230004 (M.D. Ala. Mar. 29, 2016), *judgment entered*, No. 1:15CV539-MHT, 2016 WL 1230006 (M.D. Ala. Mar. 29, 2016); *cf. Johnson*, 720 F.3d at 1313 ("Under Alabama law, sheriffs and deputy sheriffs are considered executive officers of the state, and are therefore immune from suit in both their official and individual capacities.");[15] *Alexander v.*

---

[15]   The Supreme Court of Alabama has recognized only a handful of some very targeted exceptions to a sheriff's immunity from suit that are mostly injunctive in nature:

(1) to compel him to perform his duties, (2) to compel him to perform ministerial

*Hatfield*, 652 So. 2d 1142, 1143 (Ala. 1994) ("A sheriff is an employee of the State and, as such, is immune from suit, in his official [and individual] capacity, for negligent performance of his statutory duties.").

Put differently, taking the "law" prong to a policy and procedures level would substantially eviscerate the scope of the sovereign immunity defense that the Alabama Legislature intended to provide in passing the Jailer Act. *See Clark*, 507 So. 2d at 903 ("If the statute is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the statute and examine results that will flow from giving the language in question one particular meaning rather than another." (citing *Studdard v. South Central Bell Telephone Co.*, 356 So. 2d 139, 142 (Ala. 1978))). Instead, the court finds that the Alabama Supreme Court would not embrace a statutory construction of the Jailer Act that would limit state law immunity coverage for jailers when carrying out policies and procedures incorrectly (whether intentionally or unintentionally) and would reasonably interpret the Jailer Act in a

---

acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

*Johnson*, 720 F.3d at 1313 (internal quotation marks omitted) (quoting *Alexander v. Hatfield*, 652 So. 2d 1142, 1143 (Ala. 1994)); *see also Tinney*, 77 F.3d at 383 ("Because the sheriff in *Alexander* was being sued for damages and not injunctive relief, the court held that the exceptions to Section 14 were inapplicable and therefore the sheriff was immune from suit."); *Tinney*, 77 F.3d at 383 (reversing district court's denial of sovereign immunity in suit claiming, "damages, based upon [intentional torts] of conversion and trespass" arising under Alabama law).

manner that would render it more effective than a discretionary-driven defense already available under state agent immunity. *See, e.g., Uniroyal*, 779 So. 2d at 236 ("'It must be presumed,' however, that statutes are enacted with a meaningful purpose.'" (quoting *Adams v. Mathis*, 350 So. 2d 381, 385-86 (Ala. 1977))); *Ex parte Watley*, 708 So. 2d 890, 892 (Ala. 1997) ("The Legislature will not be presumed to have done a futile thing in enacting a statute."); *cf. Hill v. Fairfield Nursing & Rehab. Ctr., LLC*, 134 So. 3d 396, 404 (Ala. 2013) (rejecting medical provider's attempt "to control the standard of care for which it will be held responsible simply by having some department within its corporate structure, <u>rather than the law</u>, select the standard of care applicable to various activities undertaken by its individual medical-provider employees") (emphasis added); *Hill*, 134 So. 3d at 404 n.7 ("<u>The law, not the institutional medical provider</u>, sets the standard of care for a given service based on the nature of that service and who is providing it.") (emphasis added).

Although Mr. Young's lawsuit includes a constitutional count alleging a violation of his Fifth, Eighth, and Fourteenth Amendment rights (Doc. 1 at 5 ¶ 25), this court has previously determined that he lacks sufficient evidence to support that deliberate indifference claim. (*See* Doc. 55 at 19-20 ("Therefore, in the absence of proof establishing Defendants' requisite subjective awareness [of the adverse connection shared between Mr. Young and Mr. Howard or the potential danger

created by placing Mr. Young in the same cell block as Mr. Howard], no reasonable jury could ever find in Mr. Young's favor on his deliberate indifference claim.")).[16] Accordingly, in the absence of an underlying viable constitutional claim or the potential violation of a civil or criminal statute, this court concludes that Mr. Young's common-law claims for negligence, wantonness, and intentional infliction of emotional distress are subject to dismissal on sovereign immunity grounds under the Jailer Act.

> ### c. Alternatively, the Issue of Defendants' Violation of Policies and Procedures Is not Properly Before This Court Because It Is not Part of Mr. Young's First Amended Complaint.

Assuming for argument purposes that a violation of jail policies and procedures could constitute non-compliance under the "law" prong of the Jailer Act, Defendants would still be entitled to a sovereign-immunity dismissal of Mr. Young's state law claims for a different reason. As pointed out by Defendants in their reply brief:

> On remand Plaintiff attempts to wholly recast both the allegations in his complaint and the sovereign immunity argument he presented in the summary judgment proceedings. The only conduct alleged as the basis of Plaintiff's state-law tort claims was assigning Plaintiff to the same cell as Howard with knowledge of their adverse relationship, and the only laws this claimed act was alleged to have violated were the Fifth,

---

[16] The court likewise found that Mr. Young lack sufficient evidence to support his dependent federal conspiracy count. (Doc. 55 at 23-24).

> Eighth and Fourteenth Amendments. (Doc. 10 at ¶¶ 12, 21, 22, 23, 25, 32, 36). Plaintiff did not plead any claim, against any Officer, based upon an alleged failure to follow jail policies or procedures, or an alleged failure to intervene. (*Id.*).

(Doc. 67 at 3). The court has reviewed Mr. Young's first amended complaint and agrees it lacks any allegations that Defendants failed to follow jail policies or procedures or that they failed to intervene to protect Mr. Young.

> Defendants further explain, with reference to controlling case authority:

> The Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004). Hence, Plaintiff "cannot use his briefing to add new allegations and argue that those new assertions support his cause of action." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 705 (11th Cir. 2016).

(Doc. 67 at 3); *see also Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1228 (11th Cir. 2013) ("In affirming the district court's dismissal of the claim at issue, we refused to consider these additional facts, citing precedent that precludes a plaintiff from amending its complaint 'through argument at the summary judgment phase of proceedings.'" (quoting *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n. 27 (11th Cir. 2012))); *Flintlock*, 710 F.3d at 1128 ("This court's precedent foreclosed *Well–Come*'s attempt to amend its complaint at the summary judgment stage without seeking leave of court[.]"); *Blankenship*, 893 So. 2d at 306 (recognizing that "[i]t is a well-settled rule that a party is bound by what it states in

its pleadings" (internal quotation marks omitted) (quoting *Help At Home, Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001)) (citing *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983))).

Therefore, based upon binding Eleventh Circuit, Defendants are alternatively entitled to a sovereign-immunity dismissal under the Jailer Act because Mr. Young's first amended complaint is devoid of allegations that Defendants violated policies and procedures and he has not sought leave to amend his complaint to include those critical assertions.[17] *See Gilmour*, 382 F.3d at 1315 ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with [FED. R. CIV. P. 16(b) and] FED. R. CIV. P. 15(a)."); *cf. also GJR Investments, Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (recognizing when analyzing qualified immunity that "defense becomes useless if an

---

[17]   While Mr. Young does assert in his first amended complaint that his removal from isolation "was taken in direct violation of the warrant and the Marshal's orders" (Doc. 10 at 5 ¶ 21), that allegation is not linked to any policy or procedure applicable to jailers. Regardless, the court comfortably concludes that failing to follow a directive from a U.S. Marshal is not within the scope of the "law" prong. *See Henderson v. Thrower*, 497 F.2d 125, 126 (5th Cir. 1974) ("[A]greements between the Bureau of Prisons and state officials, though imposing an obligation on the national government to inspect the state facilities to insure proper conditions, in no way authorize federal interference with the operation of the prisons or jails."); *id.* ("Control of the inmates, state and federal, rests in the local authorities. "); *cf. Logue v. United States*, 412 U.S. 521, 530, 93 S. Ct. 2215, 2221, 37 L. Ed. 2d 121 (1973) ("The Court of Appeals' conclusion that the deputy marshal had no authority to control the activities of the sheriff's employees is supported by both the enabling statute and the contract actually executed between the parties.").

official's motion to dismiss covers all of the claims reasonably apparent from a plaintiff's complaint, but the district court divines another claim by which the plaintiff may defeat qualified immunity"), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *cf. also Ex parte Sumter Cty.*, 953 So. 2d 1235, 1240 (Ala. 2006) ("<u>The administrator ad litem's complaint does not allege any facts</u> that would tend to show that the sheriff or deputy sheriffs were not working within the line and scope of their employment when the tragic events underlying this wrongful-death action occurred, nor did the administrator ad litem allege any such facts in his response to the motion to dismiss.") (emphasis added).

### d. Alternatively, Mr. Young Has not Carried his Burden in Demonstrating Defendants' Non-compliance With the Law Based upon Policies and Procedures.

Assuming for argument purposes that a violation of policies and procedures could constitute non-compliance under the "law" prong of the Jailer Act and that Mr. Young's first amended complaint puts Defendants on notice of that category of non-compliance, Defendants would still be entitled to a sovereign-immunity dismissal of Mr. Young's state law claims because Mr. Young has not carried his evidentiary burden. In particular, the court rejects Mr. Young's reliance upon the self-defense immunity structure for Ala. Code § 13-3-23(d) addressed in *Ex parte Watters*, No.

1150182, 2016 WL 6135232 (Ala. Oct. 21, 2017) (Doc. 66 at 11-13) as a useful framework for deciding burdens of proof under the Jailer Act. (Doc. 66 at 11). In making this particular argument, Mr. Young has missed a key ingredient of the Jailer Act–it bestows Alabama jailers with sovereign immunity, not qualified immunity. (*Cf.* Doc. 66 at 12 ("Although *Watters*' holding applied to Ala. Code § 13A-3-23, it is equally applicable to the <u>qualified immunity</u> granted by Ala. Code §§ 14-6-1 and 36-22-3.") (emphasis added)).

Mr. Young's position that Defendants must prove their compliance with jail policies and procedures to retain (or avoid a waiver of) sovereign immunity is also at odds with the overriding general principle that the burden of establishing federal jurisdiction falls squarely upon the party who is attempting to invoke the jurisdiction of the federal court. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed. 1135 (1936); *see also Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) ("The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam))); *cf. Carter v. Butts Cty.*, 821 F.3d 1310, 1324 (11th Cir. 2016) (recognizing under Georgia law that "burden of demonstrating a waiver of sovereign immunity

falls on the party seeking to benefit from it");[18] *Garrett v. Talladega Cty. Drug & Violent Crime Task Force*, 983 F. Supp. 2d 1369, 1374 (N.D. Ala. 2013) (recognizing that in case involving Eleventh Amendment immunity, plaintiff "'constantly bears the burden of proof that jurisdiction does in fact exist'" (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001))).

The court further finds that an approach which places a burden on the jailer to demonstrate that he was acting in compliance with policies and procedures is untenable because it would make accessing sovereign immunity under the Jailer Act more difficult for a jailer than receiving state agent immunity. Additionally, putting that burden on the plaintiff at the dispositive motions phase is comparable with the burden placed on the plaintiff at the pleadings stage in *Sawyer*–the plaintiff's state law common-law negligence claim was not dismissed under the Jailer Act because the plaintiff had plausibly shown that the jailer defendants had violated the Eighth Amendment. *Sawyer R&R*, 2012 WL 6046019, at *11.

Therefore, consistent with the Jailer Act's overall purpose to place jailers on nearly equal legal footing with sheriff and sheriff deputies and the general

---

[18]  The court has searched for, but has not located, a similar statement made about sovereign immunity by an Alabama court. *Cf. Alabama Dep't of Transp.*, 978 So. 2d at 21 ("In this case, ALDOT, as the party asserting the defense of immunity, bore the burden of demonstrating that Good Hope can prove no set of facts establishing one of the exceptions to the State's sovereign immunity." (citing *Ex parte Butts*, 775 So. 2d at 177 (describing standard that applies when a party moves to dismiss for failure to state a claim))).

jurisdictional principles referenced above, the court concludes that Mr. Young has the burden to show sufficient evidence of Defendants' non-compliance with policies and procedures for this court to acquire subject matter jurisdiction over his state law claims. Further, the evidence that Mr. Young has relied upon in his post-remand brief is inadequate to meet that burden.

As for those policies and procedures discussed more specifically, Mr. Young maintains that Defendants disregarded the prisoner classification process as provided for under the Classification Handbook (Officer Joiner and Sergeant Laatsch). (Doc. 66 at 13-14, 18-20). Further, without referencing a specific policy or procedure, Mr. Young contends that Officer Young failed to adequately perform tower operator duties and Officer Myhrer failed to follow or report explicit instructions from the U.S. Marshal to keep Mr. Young in isolation. (Doc. 66 at 17-18).

The court first addresses Mr. Young's contentions relating to Officers Young and Myhrer. In the absence of Mr. Young's linking these challenged acts to a specific jail policy or procedure that these Defendants have arguably violated, those arguments are, on their face, insufficient to show non-compliance with the law under the Jailer Act.

As for the challenged actions of Officer Joiner, Mr. Young contends that he violated the Classification Handbook when Mr. Young was placed into A-6. The

complete paragraph from the Classification Handbook that Mr. Young relies upon states:

> Since there are fewer blocks to choose from with a maximum and medium designation, cross housing is allowed between maximum and medium inmates. This is based on both security classes having assaultive felonies. However, this should be used sparingly and reports indicating the justification for the move need to be completed. Due to having fewer maximum and medium inmates, there are fewer cells designated for these classes to offer more room for minimum security.

(Doc. 51-15 at 19).[19] Mr. Young contends that Officer Joiner violated the Classification Handbook in his placement of Mr. Young because cross housing is to be used "sparingly" and because he did not provide a report detailing the justification for moving Mr. Young into A-6, which housed both medium and maximum security inmates. (Doc. 66 at 18-19). Mr. Young argues that Sergeant Laatsch violated the same Classification Handbook provision in the same manner. (Doc. 66 at 19-20).

Because the Classification Handbook expressly permits cross housing, the court concludes that Mr. Young's evidence is insufficient to show that either Officer Joiner or Sergeant Laatsch violated a jail policy or procedure when they decided to move Mr. Young into A-6. As for the apparent failure of Officer Joiner or Sergeant Laatsch to provide a report explaining the move of Mr. Young into A-6, that evidence of an arguable violation of procedure is inadequate because Mr. Young has not shown

---

[19]   All page references to Doc. 51-15 correspond with the court's CM/ECF numbering system.

how the omission of a report proximately caused his claimed injuries. Importantly, the Classification Handbook does not mandate that the report must be completed <u>in advance</u> of moving a prisoner or that, absent a report, a prisoner <u>shall not</u> be moved.

Further, even if Officer Joiner or Sergeant Laatsch had completed a written report at the time Mr. Young was moved, Mr. Young has failed to demonstrate how adhering to that reporting procedure would have made a meaningful difference. The same resulting injuries still would have occurred with the paperwork completed because Mr. Young still would have been moved to A-6 and gotten into an altercation with Mr. Howard. To the extent Mr. Young's brief speculates that if Officer Joiner and Sergeant Laatsch had adhered to the reporting rule, Mr. Young would have remained in his single cell or placed somewhere else other than in A-6, "[s]tatements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980), and Mr. Young is left with no supporting evidence. Therefore, the court alternatively finds that, to the extent the "law" prong of the Jailer Act includes violations of policies and procedures, Mr. Young has the burden to show how Defendants have violated policies and procedures in a manner that proximately caused his injuries and damages. Further, based upon the record before this court, Mr. Young has not met his burden. Therefore, a sovereign-immunity dismissal of Mr. Young's state law claims in favor of Defendants is appropriate for this third

alternative reason.

## V.   Conclusion

Thus, on remand, a without-prejudice dismissal of Mr. Young's state law claims is appropriate for three alternative reasons. First, for a jailer to receive sovereign immunity protection comparable to sheriffs, the "law" clause requires compliance with civil statutes, criminal statutes, and constitutional principles, but not with common-law torts or policies and procedures. Second, assuming the Jailer Act requires compliance with policies and procedures to preserve sovereign immunity, Mr. Young's first amended complaint omits any such critical allegations and, absent obtaining leave to amend, Mr. Young's policies-and-procedures theory is not properly before the court from a procedural standpoint. Third, assuming that the "law" clause does require compliance with policies and procedures and excusing Mr. Young's lack of reference to any within his first amended complaint, Mr. Young has the burden to show Defendants' non-compliance with them for a jailer's sovereign immunity to be waived and he has not met that burden on this record.

Accordingly, the court's previous ruling on Mr. Young's state law claims (Doc. 55 at 24-29) is due to be vacated. Instead, Mr. Young's state law claims against all Defendants are due to be dismissed without prejudice by virtue of the sovereign

immunity granted to them under the Jailer Act.[20] The court will enter a final dismissal order that is consistent with this memorandum opinion.

      **DONE** this 21st day of March, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[20]  As explained in § IV.A, *supra*, Mr. Young does not contest the dismissal of his state law claims against Officer Higgins and has abandoned his state law claims against Officers Mitchell and Mills.

45